IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOMESITE INSURANCE CO., IN ITS OWN RIGHT AND ON BEHALF OF INSURANCE COUNSELOR'S, INC., D/B/A/ GEICO INSURANCE AGENCY | : : : : : | CIVIL ACTION |
| v. | : : | |
| MICHAEL P. NEARY, JR., et al. | : | NO. 17-2297 |

MEMORANDUM

Bartle, J.                                                    September 17, 2018

      Plaintiff Homesite Insurance Co., in its own right and on behalf of Insurance Counselor's Inc., d/b/a GEICO Insurance Agency ("Homesite"), commenced this action against defendants John Waris and Michael P. Neary, Jr. under the Declaratory Judgment Act, 28 U.S.C. § 2201. Homesite, which had issued a homeowner's policy to Neary's parents, seeks a declaration that it has no duty to defend or to indemnify Neary in a civil action brought by Waris against Neary in the Court of Common Pleas of Montgomery County, Waris v. Neary, No. 2014-04102 (Mont. Cnty. C.C.P. Feb. 25, 2014).[1] Before the court is the motion of Homesite for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

---

1. Neary's parents were originally defendants in the underlying action, but the parties have stipulated to their dismissal without prejudice. Whether Neary is an insured under the policy is disputed due to his separate residence at the time of the events in question, but we need not resolve this issue in light of our disposition of the pending motion on other grounds.

I

An insurer must defend an action "whenever the complaint against its insured potentially may come within the policy's coverage." First Oak Brook Corp. Syndicate v. Comly Holding Corp., 93 F.3d 92, 94-95 (3d Cir. 1996). The "in for one, in for all" rule requires an insurer to defend the insured in the entire lawsuit as long as one claim is potentially within the scope of the coverage even though other claims are not. See Adrian Lupu v. Loan City, LLC, --- F.3d ---, No. 17-1944, 2018 WL 4290048, at *8 (3d Cir. Sept. 10, 2018) (citing Am. & Foreign Ins. Co. v. Jerry's Sport Center, Inc., 948 A.2d 834, 845 (Pa. 2008)).

We determine an insurer's duty to defend solely by comparing the policy terms with the factual allegations contained within the underlying complaint.[2] Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896-97 (Pa. 2006); Mut. Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999). We consider the facts pleaded in the underlying complaint and disregard any legal conclusions. See, e.g., Mellon Bank, N.A. v. Nat'l Union Ins. Co. of Pittsburgh, 768 A.2d 865, 868-69 & n.1 (Pa. Super. 2001). This rule, which

---

2. Although the insurance policy in controversy was issued in New Jersey, the assault took place in Pennsylvania and the parties agree that Pennsylvania law applies to this diversity action.

is commonly referred to the four corners rule, is designed to promote efficiency and ease the administration of insurance coverage disputes. See Lupu, 2018 WL 4290048, at *5. As our Court of Appeals has recognized, the Pennsylvania Supreme Court has declined to create any exceptions to this "bright-line" rule.[3] See id. at *6-7 (citing Kvaerner, 908 A.2d at 896). Accordingly, we are bound to confine our analysis to the four corners of the complaint filed by Waris in the underlying civil lawsuit.

The interpretation of an insurance policy is a question of law properly decided by the court. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). Our primary goal in interpreting an insurance policy, as with any contract, is to ascertain the parties' intentions as manifested by the policy's terms. 401 Fourth Street, Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). "When the language of the policy is clear and unambiguous, a court is required to give effect to that language." Id. Alternatively, when a term in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of

---

3. Our Court of Appeals has recently predicted that the Pennsylvania Supreme Court would recognize an exception to this rule for actions involving title insurance policies, which are not in issue here. See Lupu, 2018 WL 4290048, at *9-10.

indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Id.

II

The following factual allegations are set forth in the underlying civil complaint filed by Waris in the state court. On the evening of February 25, 2012, Waris was the victim of a "violent criminal assault" by Neary. At the time, Waris and Neary were roommates sharing a rented apartment in Bryn Mawr, Pennsylvania. According to the complaint, at the time of the attack Neary was suffering from "pre-existing mental health issues which may cause him to exhibit violent and aggressive behavior." These mental health issued were "severely exacerbated upon consumption of alcohol" by Neary.

On the night of the assault, Neary and Waris attended a party where Neary consumed alcohol. At the party, without provocation, Neary began to attack Waris orally and physically. After the attack, Waris returned to the apartment he shared with Neary. Shortly thereafter, Neary made his way back to the apartment and physically assaulted Waris. After the assault Neary delayed in seeking help or medical care for Waris, thereby exacerbating Waris's injuries. As a result of the attack, Waris suffered a traumatic brain injury which has caused memory loss, concentration issues, headaches, insomnia, and emotional distress.

The underlying complaint against Neary contains counts for: (1) negligence and recklessness (Count I); (2) negligent infliction of emotional distress (Count III); and (4) negligent failure to rescue (Count IV).[4] Waris seeks compensatory and punitive damages plus interest, costs, and attorneys' fees.

III

The plain language of the Homesite policy limits coverage to injury or damage caused by an accident. Specifically, it provides that coverage extends to a claim or suit "brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily Injury'; or b. 'Property damage.'" Additionally, the policy contains an "Exclusions" section, which forecloses coverage for "'bodily injury' or 'property damage' . . . [w]hich is expected or intended by the 'insured.'"

---

4. As noted previously, the complaint in the underlying action also named Neary's parents as defendants. It alleged that they "failed to exercise due care to correct, control, curb and/or warn others of [Neary's] mental health issues/violent tendencies, including, but not limited to, when consuming alcohol." These claims are no longer in the case.

While the Homesite policy does not define "accident," we construe words of common usage in an insurance policy "according to their natural, plain, and ordinary sense." Kvaerner Metals Div. of Kvaerner U.S., Inc., 908 A.2d at 897 (citing Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999)). The Pennsylvania Supreme Court has instructed that the term "accident" in an insurance policy "refers to an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity. An injury therefore is not 'accidental' if the injury was the natural and expected result of the insured's actions." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 292 (Pa. 2007) (internal citation omitted); see also Kvaerner Metals Div. of Kvaerner U.S., Inc., 908 A.2d at 897-98.

As noted above, Waris alleges in the underlying complaint that Neary committed a "violent criminal assault" against him.[5] Specifically, Waris asserts that Neary orally and

---

5. While the underlying complaint does not go into detail, the "violent criminal assault" clearly refers to a matter of public record, which the parties do not dispute, that Neary pleaded guilty to a felony charge of aggravated assault in the Court of Common Pleas of Montgomery County. See Commonwealth v. Neary, No. 6858-2012 (Mont. Cnty. C.C.P. Aug. 9, 2013). Neary was represented by counsel. Under Pennsylvania law, a person is guilty of aggravated assault if he causes "serious bodily injury to another . . . intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of

physically attacked him without provocation while they attended a party. After Waris had returned to their shared apartment to recover from this attack, Neary went back to the apartment and again assaulted Waris, this time causing severe and permanent injuries. The assault as alleged in the underlying complaint cannot be characterized as an accident. See Gene's Rest., Inc. v. Nationwide Ins. Co., 548 A.2d 246, 247 (Pa. 1988). The allegations raised by Waris "simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." See Kvaerner Metals Div. of Kvaerner U.S., Inc., 908 A.2d at 899. The injuries allegedly sustained by Waris were not "unexpected" but rather were the "natural and expected result" of the assault by Neary. See Donegal Mut. Ins. Co., 938 A.2d at 292.

Although Waris's complaint alleges claims against Neary for "negligence & recklessness," "negligent infliction of emotional distress," and "negligent failure to rescue," this characterization is not controlling. It is well-established that artful pleading will not trigger an insurer's duty to defend. State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 116 (3d Cir. 2009). Rather, we must look to the factual allegations of the complaint. Id. (citing Haver, 725

---

human life." See 18 Pa. Cons. Stat. Ann. § 2702(a)(1). Neary was sentenced to a term of imprisonment of eight to twenty-three months.

A.2d at 745). For the reasons discussed above, the assault by Neary cannot be deemed an "occurrence," that is, an accident, under the insurance policy. Accordingly, Waris's attempt to characterize causes of action arising from the assault as claims sounding in negligence is insufficient to trigger Homesite's duty to defend.

In an attempt to escape this result, Waris has asserted in the underlying complaint that the attack was caused by Neary's consumption of alcohol. Under Pennsylvania law, intoxication "must be considered in determining if the actor has the ability to formulate an intent." Mehlman, 589 F.3d at 112 (citing Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953 (Pa. 1993)). If the actor lacks the ability to formulate intent, it follows that the resulting act cannot be intentional. Id. "The mere fact that an insured was intoxicated, however, will not prevent a court from finding that he intended the natural and probable consequences of his actions." Id. Thus, "voluntary intoxication ordinarily will not prevent the formation of the general intent necessary for the commission of an assault." Id. at 115. Instead, Pennsylvania courts have only recognized voluntary intoxication as negating a finding of intent where the insured was in the midst of an alcoholic blackout or completely lost awareness of his actions. See id.

-8-

at 113-15.  As our Court of Appeals has aptly stated when explaining this distinction:

> It is entirely appropriate to recognize this limitation on the consequences of intoxication in coverage disputes, for alcoholic beverages certainly can contribute to the loosening of a person's inhibitions without eliminating his ability to intend to engage in harmful conduct.  Indeed, the effect of the use of alcoholic beverages may contribute to a party formulating an intent to engage in anti-social conduct.

Id. at 112.

Here, the underlying complaint merely alleges that Neary "consumed alcohol" on the night of the assault.  The complaint contains no factual allegations to support an inference that Neary's voluntary intoxication rose to a level that would render his actions accidental.  There is no information regarding the amount Neary drank that evening, his blood alcohol content, or anything else about the degree to which Neary was impaired, if at all.  Importantly, there is no allegation that Neary was in the midst of an alcoholic blackout or that he completely lost awareness of his actions when he attacked Waris.  Instead, the complaint alleges that Neary orally and physically attacked his roommate Waris at a party and then travelled to their shared apartment where he again assaulted Waris.  Thus, the conclusory allegation that Neary

consumed alcohol, without more, is insufficient to trigger Homesite's duty to defend.

We are bound to reach the same conclusion with regard to Waris's allegation in the underlying complaint that the assault by Neary was caused by the "pre-existing mental health issues" of Neary. The complaint contains no factual support for the allegation that Neary has any specific mental health issue which was so severe as to negate his ability to form general intent. See Germantown Ins. Co. v. Martin, 595 A.2d 1172, 1175-76 (Pa. Super. 1991). Accordingly, this conclusory allegation cannot render the "violent criminal assault" by Neary an accident covered by the insurance policy. See id.

In opposing Homesite's motion, Neary asserts that coverage should be extended in the underlying matter because he acted in self-defense when he assaulted Waris.[6] There is nothing within the four corners of the underlying complaint that would support this position, and thus we decline to consider it.

Finally, Waris points out that the policy does not specifically exclude coverage for criminal acts. This is

---

6. In support of his position, Nearly relies on State Farm Fire and Casualty Co. v. DeCoster, 67 A.3d 40 (Pa. Super. 2013). In DeCoster, the Pennsylvania Superior Court determined that there existed a genuine dispute of material fact regarding coverage where the insured, while under the effects of extreme intoxication, mistakenly shot a house guest that he believed to be an intruder. 67 A.3d at 47. We do not find the holding of DeCoster, which was limited to the "specific facts of [the] case," to be relevant to our analysis here.

irrelevant because, as discussed above, the policy applies only to an "occurrence," that is, an accident. We further note that there are also specific exclusions for the intentional acts of the insured and for injuries "[a]rising out of physical or mental abuse."

We conclude that the attack perpetrated by Neary on Waris as alleged in the underlying complaint was not an "occurrence," that is, was not an accident. Thus, the claims of Waris are excluded from coverage under the policy, and Homesite has no duty to defend or to indemnify Neary in the underlying action. See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225-26 (3d Cir. 2005) (citing Haver, 725 A.2d at 746 n.1).

Accordingly, the motion of Homesite for judgment on the pleadings (incorrectly denominated as a motion for summary judgment) will be granted.[7]

---

7. Although Homesite moved for summary judgment, we have not considered anything beyond the underlying complaint, the insurance policy, and undisputed matters of public record. Therefore, the motion is properly considered as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993).